UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHERYL L. TITUS, on behalf of N.M.C,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**REPORT AND RECOMMENDATION**

12-CV-1056
(MAD/VEB)

---

## I. INTRODUCTION

Plaintiff Cheryl L. Titus, the mother and natural guardian of N.M.C. ("Claimant"),[1] is pursuing applications on Claimant's behalf for Supplemental Security Income ("SSI") benefits under the Social Security Act, alleging disability due to attention deficit-hyperactivity disorder ("ADHD") and a learning disability. The Commissioner of Social Security denied the applications.

Plaintiff, through her attorneys, Hinman Howard & Kattell, LLP, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On October 2, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

---

[1] N.M.C. is a minor child. Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, he will be referred to as "Claimant" in this Report and Recommendation.

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff is the mother of Claimant, a minor child. On January 25 2006, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning January 15, 2004. (T at 41-42).[2] The application was denied initially and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). On April 7, 2008, a hearing was held in Binghamton, New York before ALJ Dennis O' Leary. (T at 12, 264).[3] Claimant and Plaintiff appeared without an attorney. (T at 267). Plaintiff testified. (T at 268-276). The ALJ also questioned Claimant. (T at 276-78).

On May 20, 2008, ALJ O'Leary issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act. (T at 12-25). ALJ O'Leary's decision became the Commissioner's final decision on November 28, 2008, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 5-8).

Plaintiff, acting on Claimant's behalf and represented by counsel, commenced an action in the United States District Court for the Northern District of New York on January 27, 2009, which was assigned case number 09-CV-0093. On July 6, 2010, this Court issued a Report and Recommendation, wherein a remand for further administrative proceedings and additional development of the record was recommended. (T at 344-60). On August 20, 2010, the Honorable Glenn T. Suddaby, United States District Judge, issued

---

[2] Citations to "T" refer to the Administrative Transcript. (Docket No. 7)

[3] The ALJ presided via videoconference from Newark, New Jersey. (T at 12).

a Decision and Order accepting and adopting this Court's Report and Recommendation in its entirety and remanding the case. (T at 361-62).

On September 15, 2010, the Appeals Council remanded the case to the ALJ. (T at 363-66). The Appeals Council noted that Plaintiff filed a second application for benefits on April 20, 2009 (T at 371-73), and directed the ALJ to consolidate the claims and issue a decision. (T at 365). The case was assigned to ALJ Elizabeth W. Koennecke. (T at 367). On November 15, 2010, ALJ Koennecke wrote to Plaintiff's attorney, requesting any and all updated medical and other evidence, along with a current teacher questionnaire. (T at 368). The ALJ asked counsel to re-contact Dr. Fras, a treating physician, and offered to conduct a supplemental hearing at Plaintiff's option. (T at 368). On December 10, 2010, Plaintiff's attorney wrote the ALJ and advised that Plaintiff was waiving a supplemental hearing. (T at 370).

On January 11, 2011, ALJ Koennecke issued a decision denying Plaintiff's applications for benefits. (T at 297-312). ALJ Koennecke's decision became the Commissioner's final decision on May 2, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 282-84).

On June 29, 2012, Plaintiff, acting on Claimant's behalf and with counsel, commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). The Commissioner interposed an Answer on October 26, 2012. (Docket No. 6). Plaintiff filed a supporting Brief on December 10, 2012. (Docket No. 9). The Commissioner filed a Brief in opposition on February 20, 2013. (Docket No. 13).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the

Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for the calculation of benefits.

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos

v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning

intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.  Analysis**

    **1.  Commissioner's Decision**

ALJ Koenenecke noted that Claimant was born on January 17, 2000, and was therefore a "preschooler," as defined under the applicable Social Security Regulations, on

7

January 25, 2006 (the date the initial application for benefits was filed) and a "school-age child," on January 21, 2011 (the date of the ALJ's decision). (T at 300). The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. (T at 300). The ALJ further determined that Claimant's ADHD (which included oppositional defiance disorder) was a "severe" impairment under the Social Security Act. (T at 300-301).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 302). The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled one or more of the impairments set forth in the Listings. (T at 302-11).

As such, the ALJ found that Claimant had not been disabled, as defined under the Social Security Act, from the date the initial application for benefits was filed to the date of the ALJ's decision. (T at 312). As noted above, ALJ Koennecke's decision became the Commissioner's final decision on May 2, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 282-84).

### 2. Functional Equivalence Analysis

Plaintiff challenges the ALJ's functional equivalence analysis. As outlined above, if a child claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must determine whether the impairment or combination of impairments are functionally equivalent to a Listing. Analysis of functionality is informed by consideration of how a claimant functions in six (6) main areas, which are referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In the present case, ALJ Koennecke determined that Claimant had: (1) less than a

marked limitation in acquiring and using information; (2) marked limitation with regard to attending to and completing tasks; (3) less than a marked limitation with respect to interacting with and relating to others; (4) no limitation in moving about and manipulating objects; (5) less than a marked limitation in the ability to care for himself; and (6) less than a marked limitation with regard to health and physical well-being. (T at 305-312).

Plaintiff argues that the ALJ did not properly assess the evidence. Plaintiff contains the ALJ should have found marked limitations in the domains of acquiring and using information and interacting and relating to others. This Court will examine the evidence with respect to Claimant's functioning in both of these domains in turn.

### i.  Acquiring and Using Information

The domain of acquiring and using information considers the child's ability to acquire or learn information and how well the child uses the information he or she has learned. 20 C.F.R. § 416.926a(g).

Preschool children (age 3 to age 6) should begin to learn and use the skills that will help them learn to read and write and do arithmetic. Examples of such skills include: listening to stories, rhyming words, matching letters, counting, sorting shapes, and building with blocks. They should also be learning skills such as painting, coloring, copying shapes, and using scissors. They should be using words to ask questions, give answers, follow directions, describe things, explain what they mean, and tell stories. 20 C.F.R. § 416.926a(g)(2)(iii).

School-age children (age 6 to age 12) should be able to learn to read, write, demonstrate math skills, and discuss history and science. Examples of these skills include: reading about various subjects and producing oral and written projects, solving

9

mathematical problems, taking achievement tests, doing group work, and entering into class discussions. The child should also use these skills in daily living situations at home and in the community by, for example, reading street signs, telling time, and making change). The child should use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing his or her own ideas, and by understanding and responding to the opinions of others. C.F.R. § 416.926a(g)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and his difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3).

The ALJ found that Claimant had less than a marked limitation with regard to this domain. (T at 305-306). This conclusion is supported by substantial evidence. In May of 2009, Linda Hessian, Claimant's third grade teacher, reported that Claimant had an "obvious" (but not serious) problem with respect to expressing ideas in written form. (T at 405). She assessed only "slight" problems in comprehending oral instructions, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (T at 405). Ms. Hessian assessed no problems with regard to understanding school and content vocabulary and no problem reading and comprehending

10

written material. (T at 405). Ms. Watterman, Claimant's kindergarten teacher, made very similar findings with respect to this domain, noting an obvious (but not serious) problem expressing ideas in written form, but otherwise finding slight or no problem with the activities in this domain. (T at 120). Dr. J. Randall, a non-examining State Agency review consultant, opined that Claimant had a less than marked limitation in this domain. (T at 112). Dr. Meade, another review consultant, reached the same conclusion. (T at 514). This evidence and, in particular, the reports from Claimant's teachers, is sufficient to sustain the ALJ's conclusion as to this domain.

### ii. Interacting and Relating with Others

With regard to the domain of interacting and relating with others, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

Preschool children should be able to socialize with children as well as adults. They should begin to develop friendships with peers. They should use words instead of actions, relate to caregivers with increasing independence, and play cooperatively with other children without continual adult supervision. They should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what they are saying most of the time. 20 C.F.R. § 416.926a(i)(2)(iii).

School-age children should be able to develop more lasting friendships with their peers. They should begin to understand how to work in groups to create projects and solve

problems. School-age children should have an increasing ability to understand another person's point of view and tolerate differences. The child should be able to talk to people of all ages, share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

Examples of limitation of functioning in this domain are: lack of close friends, avoidance or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, and difficulty communicating with others, and difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

The ALJ found less than a marked limitation in this domain. (T at 308-309). This assessment is not supported by substantial evidence. Ms. Waterman, Claimant's kindergarten teacher, assessed serious problems with respect to seeking attention appropriately, following rules, and taking turns in a conversation. (T at 122). Ms. Hessian (the third grade teacher) opined that Claimant had "very serious" problems playing cooperatively with other children, making and keeping friends, seeking attention appropriately, and relating experiences and telling stories. (T at 407). She also assessed a "serious" problem with regard to following rules and "obvious" problems introducing and maintaining relevant and appropriate topics in conversation and taking turns in conversation. (T at 407). Although Ms. Hessian reported that she had not needed to implement behavior modification strategies, she did recommend Claimant for a special counseling program for students in need of help developing social skills. (T at 407). The reports of Claimant's teachers, which document pervasive problems in this domain, should have been afforded significant weight, as they had a unique and extended opportunity to

12

observe Claimant's functioning, See Edmond v. Barnhart, No. 04-CV-6515, 2006 WL 2769922, at *10 (W.D.N.Y. Aug. 9, 2006)("The Commissioner encourages the use of non-medical evidence provided by a teacher, who works with a child on a daily basis and observes him in a social setting with peers as well as adults.")(citations omitted).

In addition, the fact that Claimant had such serious difficulties interacting with others even in the structured school setting is further evidence of the nature and extent of the limitation in this domain. See Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002)(noting that the "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting."); see also Williams ex rel. D.A.W. v. Astrue, No. 08 Civ. 6375(LBS), 2009 WL 3754391, at *9 (S.D.N.Y. Nov. 5, 2009) (noting that "[i]mprovement[s] based on a structured special education environment and the efforts of teachers and therapists is insufficient to support a finding that [the claimant's] limitations are not marked").[4]

The consultative examiners' reports provide further evidence of limitation in this domain. In May of 2006, Dr. Christine Ransom, a consultative examiner, noted that

---

[4]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

Claimant liked "to play outside games with friends" and had "loving and supportive" family relationships. (T at 108). However, she assessed mild to moderate difficulty with respect to interacting adequately with peers and with adults. (T at 108). A second consultative examiner was performed in June of 2009 by Dr. Mary Ann Moore. (T at 506-510). Dr. Moore reported that Claimant had been fighting with other children at school. (T at 506). She noted that Claimant was having "some difficulty" interacting with peers and adults. (T at 509). Dr. Moore recommended psychiatric and psychological treatment, along with special services in school. (T at 510). She opined that Claimant's difficulties "may significantly interfere with [his] ability to function on a daily basis." (T at 509).

In September of 2010, Dr. Fras, Claimant's treating physician, noted that Claimant had "difficulty in social relationships." (T at 618). Although ADHD medication tended to "mitigate" Claimant's difficulties (T at 618), Dr. Fras described Claimant's limitation with regard to social developments/function as marked. (T at 619).[5]

In finding less than a marked limitation in this domain, the ALJ referenced Dr. Randall's conclusion that Claimant had no limitations as to interacting with and relating to others. (T at 112). This assessment has some evidentiary value. However, it was not based on an examination and it was rendered in January of 2006 (and thus did not include the assessments from Dr. Moore, Dr. Fras, or Claimant's third grade teacher). The ALJ also noted the opinion of Dr. Meade, the other non-examining State Agency review consultant, who assessed a less than marked limitation in this domain. (T at 514). While

---

[5]Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).

14

this opinion was rendered in 2009 and included some of the updated information (but not Dr. Fras's 2010 assesment), it nevertheless was not based on a examination and should not be afforded more weight than the assessments of Claimant's teachers and the consultative examiners. See Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998)("[The opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence."),

The ALJ also noted that counseling records from Claimant's social worker reported some anecdotal progress in terms of an increased ability to develop friendships and interact with his siblings. (T at 527, 597, 599). Again, while this evidence has some value, the ALJ should have afforded greater (and, indeed, controlling) weight to the assessments provided by Claimant's teachers, treating physician, and the consultative examiners, all of which indicated that Claimant had a marked limitation with respect to interacting with and relating to others.

### 3. Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

15

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay. Specifically, this Court finds that the record contains persuasive proof of Claimant's marked limitation of functioning in at least two of the domains identified under 20 C.F.R. § 416.926a.

The Commissioner has already determined that Claimant has a marked limitation in attending and completing tasks. (T at 306-307). For the reasons set forth above, this Court finds that the evidence compels but one conclusion under the substantial evidence standard, namely, that Claimant also has at least a marked limitation with respect to interacting and relating with others.

In particular, the reports of Claimant's classroom teachers, the opinion of Claimant's treating physician, and the reports of the consultative examiners all established significant and sustained problems in this domain of function. The ALJ placed undue weight on the reports of non-examining review consultants and a few counseling notes documenting modest progress.

The first application for benefits had been pending for more than six (6) and a half years when this case was filed. Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." Nieves ex rel. Nieves v. Barnhart, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing Maldonado v. Apfel, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children."

Molina v. Barnhart, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

Accordingly, further delay is not warranted and it is recommended that a remand be ordered solely for the calculation of benefits.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be granted, that the Commissioner's Motion for Judgment on the Pleadings be denied, the decision of the Commissioner be reversed, and this case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

Dated: November 13, 2013

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

_____
Victor E. Bianchini
United States Magistrate Judge